**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HON. RICHARD C. GALLO, as ADMINISTRATOR OF THE ESTATE OF ANTWON ROSE, II.** | : : : : | |
| **Plaintiff,** | : : | |
| **v.** | : : | |
| **THE CITY OF EAST PITTSBURGH, PA** | : : | **CIV. NO. 2:18-cv-01016-MJH** |
| **AND** | : : | |
| **MICHAEL ROSFELD** | : : : | |
| **Defendants.** | : : | |

## FIRST AMENDED CIVIL ACTION COMPLAINT

**NOW COMES** the Hon. Richard C. Gallo, as duly appointed administrator of the Estate of Antwon Rose, II, deceased, by and through undersigned counsel, complaining of Defendants, the City of East Pittsburgh ("City"), more particularly the East Pittsburgh Police Department ("EPPD"), by and through its agent and servant, Officer Michael Rosfeld, ("Rosfeld"), individually and in his official capacity as an East Pittsburgh Police Officer, and in support thereof states the following:

### NATURE OF THE ACTION

1. On June 19, 2018, Antwon Rose, II, was shot and killed by on-duty East Pittsburgh Police Department Officer Michael Rosfeld, who acted in an unreasonable and subjective manner when he shot an unarmed Antwon Rose, II, in the back repeatedly.

2. Plaintiff brings this action against Defendant Rosfeld for his use of excessive and deadly force under the color of state law resulting in the death of Antwon Rose, II ("Rose") in violation

of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.

3.  Plaintiff alleges that the City of East Pittsburgh, acting through its policy-makers, Police Commissioner Lori Fruncek ("Fruncek") and Mayor Louis J. Payne ("Payne") maintained a policy and custom of failing to properly screen, train, supervise, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force and/or deadly force, including those officers repeatedly accused of such acts. The City had a duty, but failed to implement and/or enforce policies, practices and procedures for the EPPD that respected Antwon Rose, II's constitutional rights. Defendant City, Fruncek, and Payne's failure to adequately screen, supervise, discipline, and train Defendant Rosfeld, failure to implement the necessary policies and procedures – including policies governing the use of force – and affirmative implementation of unconstitutional policies caused Rose's unwarranted and excruciating physical and mental anguish and death.

4.  For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages and the wrongful death of Antwon Rose, II.

## PARTIES

5.  Plaintiff, Richard C. Gallo, is a retired judge and was appointed administrator for the Estate of Antwon Rose, II by order of the Orphan's Court of Allegheny County on May 21, 2019. By Order of the Orphan's Court, Plaintiff- Administrator Gallo was appointed by consent and Michelle Kenney and Antwon Rose were removed as co-administrators of the Estate.

6.  Pursuant to the Order of the Orphan's Court, Administrator Gallo is substituted as the Plaintiff representative of the Estate in this First Amended Civil Action Complaint.

7.  Defendant former Police Officer Michael Rosfeld, was at all times material to this action acting under color of state law in the scope and course of his duties as a police officer with the

East Pittsburgh Police Department. He is being sued in his individual and official capacity as an employee of the EPPD.

8. Defendant City is a municipality located in Allegheny County, Pennsylvania. Defendant City operates the EPPD, and along with Chief of Police Fruncek is responsible for the implementation of the police department's budget, staffing, training, hiring, policies, procedures, practices, and customs.

## JURISDICTION AND VENUE

9. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourth Amendment rights of the decedent Antwon Rose, II. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

10. Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Western District of Pennsylvania.

## FACTS RELATED TO THE UNLAWFUL KILLING OF ANTWON ROSE, II

11. On or about, June 19, 2018 at approximately 8:40 p.m., Antwon Rose, II was one of three passengers in a vehicle being operated in the area of Grandview Avenue, located in East Pittsburgh.

12. At that time, Defendant Rosfeld was on-duty as a police officer for the City of East Pittsburgh and was patrolling in and around the same area.

13. Defendant Rosfeld activated the lights and sirens of his patrol car, signaling the vehicle containing Rose to pull over.

14. The vehicle immediately complied and came to a stop near the 600 block of Grandview Avenue.

15. Without waiting for backup units to arrive, Defendant Rosfeld immediately drew his weapon and began to shout menacing and hostile orders at the occupants of the vehicle, including Rose.

16. The tone and demeanor of Defendant Rosfeld was so aggressive that it caused the occupants of the vehicle to fear for their lives.

17. Moreover, the aggression projected by Defendant Rosfeld alarmed a nearby witness, Lashaun Livingston, who then made the decision to record the actions of Defendant Rosfeld.

18. Defendant Rosfeld ordered the occupants of the vehicle, Trevon Robinson, Zai Juan Hester and Antwon Rose II, out the vehicle without waiting for the arrival of backup units.

19. Rose alighted from the passenger seat of the vehicle showing his hands to Defendant Rosfeld who then had his weapon pointed directly at him.

20. Fearing for his life, Rose attempted to run in the opposite direction of where Defendant Rosfeld stood with his firearm.

21. Rose did not threaten Defendant Rosfeld or any other person, nor did he make any threatening gestures.

22. Rose did not possess a firearm, knife, or any other weapon at the time he exited the vehicle.

23. There is no evidence that Defendant Rosfeld or anyone else were in danger of imminent death or great bodily harm.

24. Even though Rose was unarmed and posed no threat to any individual, Defendant Rosfeld opened fire into Rose's back as he ran away.

25. Rosfeld's shots struck Rose in the back, the side of his face, and his arm, causing the seventeen-year-old boy to fall to the ground in extreme pain.

26. At no time did Rosfeld attempt to provide medical aid and/or treatment to Rose as he laid on the ground.

27. Rose was subsequently transported to UPMC hospital where he died as a result of his gun-shot wounds.

28. Rose was seventeen (17) years old when he was killed by Defendant Rosfeld.

29. During his lifetime, Rose was industrious and energetic and a good son. He gave support, advice, counsel, comfort, care, and protection to his parents and family. In all reasonable probability, he would have continued to do so.

30. Rose was an Advance Placement Honor Roll Student and had been admitted to college where he planned to pursue a career as a mechanical engineer or attorney.

31. Rose was very well liked and respected by his peers. He was in good health, with a reasonable life expectancy of living at least 67 more years to age 84. He leaves behind his parents.

## THE FAILURES OF THE EAST PITTSBURGH POLICE DEPARTMENT

### Absence of Policies and Training

32. Defendant, the City of East Pittsburgh operated the East Pittsburgh Police Department.

33. The East Pittsburgh Police Department employed officers, including Defendant Rosfeld, and provided them with uniforms, patrol cars, handcuffs, and firearms, and cloaked them with the authority of the state.

34. These officers were expected to police the community of East Pittsburgh – to patrol for crime, to perform arrests, to interact with civilians, and all other such duties as are standard for police officers across the country.

35. Unlike police officers across the country, the officers of the East Pittsburgh Police Department, including Defendant Rosfeld, were not provided with policies, training, or procedures to govern their actions.

36. East Pittsburgh Police Department did not have a policy, training, or procedure governing the proper use of force involving the discharge of firearms.

37. East Pittsburgh Police Department did not have a policy, training, or procedure governing the use of less than lethal force.

38. East Pittsburgh Police Department did not have a policy, training, or procedure governing the use of deadly force.

39. East Pittsburgh Police Department did not have a policy, training, or procedure governing police confrontations, including de-escalation tactics.

40. East Pittsburgh Police Department did not have a policy, training, or procedure governing proper arrest procedures.

41. East Pittsburgh Police Department did not have a policy, training, or procedure governing how to execute a car stop.

42. East Pittsburgh Police Department did not have a policy, training, or procedure governing requests for back-up.

43. East Pittsburgh Police Department did not have a policy, training, or procedure governing use of police radio.

44. East Pittsburgh Police Department did not have a policy, training, or procedure governing foot pursuits.

45. East Pittsburgh Police Department did not have a policy, training, or procedure governing proper investigations and charging individuals.

46. East Pittsburgh Police Department did not have a policy, training, or procedure governing responsibilities at a crime scene.

47. East Pittsburgh Police Department did not have a policy, training, or procedure governing crime scene units.

48. East Pittsburgh Police Department did not have a policy training, or procedure governing deaths, natural or sudden.

49. East Pittsburgh Police Department did not have a policy, training, or procedure governing when and how to render aid to injured suspects.

50. East Pittsburgh Police Department did not have a policy, training, or procedure governing complaints against the East Pittsburgh Police Department.

51. Upon information and belief, East Pittsburgh Police Department did not have an internal affairs unit to investigate corruption, criminal activity, or inappropriate conduct within its ranks.

52. East Pittsburgh Police Department did not have a policy governing selection and training of individuals for positions as police officers.

53. East Pittsburgh Police Department did not have a policy governing impairment and drug testing of sworn personnel.

54. East Pittsburgh Police Department did not have a policy governing outside employment of sworn personnel.

55. East Pittsburgh Police Department did not have a policy governing the fitness and wellness of employees.

56. East Pittsburgh Police Department did not have a policy governing field development and mentorship of sworn personnel.

57. Model policing policies are offered by both the International Association of Chiefs of Police, as well as the Allegheny County Chiefs of Police Association. These model policies are thoroughly vetted.

58. The Allegheny County Chiefs of Police Association policies are offered to all Allegheny County police departments for customization and implementation.

59. Despite this, the East Pittsburgh Police Department effectively operated as a fly by night organization without any of the structures or policies utilized by police departments across the country to assist in the protection of the civil rights of citizens, the reliable enforcement of the laws, and the successful operation of a police department.

60. The failure to issue policies and formal training governing officer conduct led to an unchecked and untrained police force with no guidance as to how to confront individuals, what appropriate steps should be taken to handle situations, how to respect the rights of civilians, and most critically when and how use of force decisions should be made.

61. Defendant City continued to ignore the need and obligation to implement policies and formal training despite multiple prior deaths caused by the alleged excessive force of its police officers including those of Anita White and Gary Beto.

<u>Failure to Supervise and Discipline</u>

62. The East Pittsburgh Police Department failed to maintain any disciplinary or investigatory procedures to address alleged wrong-doing and complaints against officers.

63. EPPD did not maintain any system for the evaluation of officer performance.

64. EPPD did not maintain any system for tracking the disciplinary history of its officers.

65. EPPD did not maintain any system for tracking complaints made against officers.

66. EPPD did not operate an internal affairs division, nor did they contract with any external agencies to perform the functions of a traditional internal affairs division.

67. As a result, officers worked with impunity, knowing there was no potential for discipline, termination, or even a record resulting from their wrongdoing.

68. Additionally, in the rare occurrence that the need to make a disciplinary decision became unavoidable, the City refused to carry out its responsibility to make disciplinary decisions for officers. This is evidenced by statements made by Mayor Payne to the TribLive when he

indicated that the elected officials of East Pittsburgh would not make any decision regarding disciplinary or employment actions to be taken against Defendant Rosfeld, and instead, such actions would be deferred to unnamed attorneys.

<u>Failure to Screen and Vette Michael Rosfeld</u>

69. East Pittsburgh Police Department did not have a policy governing background checks or screening of applicants to its police force.

70. As a result, East Pittsburgh Police Departments' hiring practices, much like their policing and training practices, lacked any formal structure or policies.

71. East Pittsburgh Police Department failed to complete a psychiatric exam for Rosfeld.

72. East Pittsburgh Police Department failed to administer any type of aptitude test on Rosfeld.

73. East Pittsburgh Police Department failed to complete even the most basic of employment history checks on Rosfeld, including calling former employers, confirmation of references, or otherwise screening Rosfeld whatsoever.

74. Michael Rosfeld had been previously employed by the University of Pittsburgh Police Department and the Harmar Police Department.

75. Despite learning this information on Rosfeld's application, East Pittsburgh Police Department failed to contact either department to request his employment file or otherwise determine if any prior incidents counseled against hiring Rosfeld.

76. If East Pittsburgh Police Department had contacted the departments, they would have uncovered allegations against Rosfeld which included, upon information and belief, allegations of racial bias, allegations of false reporting, and allegations of utilizing unnecessary and excessive force.

77. These hiring practice failures of the East Pittsburgh Police Department resulted in the hiring of an unqualified and ill-equipped individual in Michael Rosfeld who was, upon information and belief, known to have racial bias and utilize excessive force.

## WRONGFUL DEATH ACTION

78. Plaintiff, Hon. Richard C. Gallo, as appointed by the Orphan's Court to be administrator of the Estate of Antwon Rose, II, hereby brings Wrongful Death claims pursuant to 42 Pa.C.S. §8301 (the Pennsylvania Wrongful Death Statute) and Pa.R.C.P. 2202(a), on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of Antwon Rose, II.

79. Plaintiff claims all available damages under the Pennsylvania Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, Antwon Rose, II, would have rendered to the wrongful death beneficiaries but for his traumatic, untimely and unnatural death occurring as a result of fatal shooting by Michael Rosfeld which is subject to the present litigation.

80. Plaintiff claims damages for payment for all medical bills and/or expenses.

81. Plaintiff claims damages for payment of funeral and burial expenses.

## SURVIVAL ACTION

82. Plaintiff also brings a Survival Action under the Pennsylvania Survival Statute, 42 Pa.C.S. § 8302, and pursuant to 20 Pa.C.S. § 3373, for all damages recoverable under the Statute, including but not limited to, loss of income both past and future income potential, as well as, pain and suffering prior to death, and for emotional distress suffered by Plaintiff's decedent, Antwon Rose, II, from the initiation of the assault upon him until the ultimate cause of his death.

## COUNT 1: 42 U.S.C. § 1983 EXCESSIVE FORCE
## AGAINST DEFENDANT, OFFICER MICHAEL ROSFELD

83.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

84.     Plaintiff would show that Defendant Rosfeld's actions on the occasion in question were wrongful, malicious and reckless in depriving Rose of his constitutional rights.

85.     Plaintiff would show that Defendant Rosfeld failed to act as an objectively reasonable officer would have acted in the same or similar circumstances. That is, Defendant Rosfeld, without legal or necessary justification or the need to do so, used excessive and deadly force as described above and killed Antwon Rose, II.

86.     Plaintiff would show that Defendant Rosfeld denied Rose of his right to be free from the use of excessive force in violation of the 4th Amendment to the United States Constitution.

87.     The force used by Defendant Rosfeld was objectively unnecessary, excessive and unreasonable under the circumstances, as Rose did not pose an immediate threat to the safety of Defendant Rosfeld or others. Defendant Rosfeld embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Rose's death.

88.     Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Rosfeld pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under 42 U.S.C. §§ 1985 and 1988, and any other remedies legally appropriate.

## <u>COUNT II: MUNICIPAL LIABILITY</u>
## AGAINST DEFENDANT, THE CITY OF EAST PITTSBURGH

89.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

90.     The conduct of Defendant Rosfeld as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Antwon Rose II's constitutional rights.

91.     The conduct set forth herein, as well as the training and disciplinary failures of the East Pittsburgh Police Department demonstrates that the City of East Pittsburgh failed to properly screen and hire its police officers, failed to implement policies governing officer conduct, failed to properly train officers on the use of deadly force, the excessive use of force, identification of an actual or imminent threat of death or serious bodily injury, techniques for detaining individuals in motor vehicles, approaching individuals in motor vehicles, and proper police encounter techniques all of which were individually and collectively the moving force in the deprivation of Rose's constitutional rights.

92.     Prior to June 19, 2018, the East Pittsburgh Police Department knew or should have known of its policy and practice failures through the complete absence of policies governing officer conduct, the complete absence of training on critical policing issues, the complaints filed against EPPD officers, civil lawsuits, and settlements, among other means.

93.     The conduct set forth herein, as well as the supervision and disciplinary failures of the EPPD demonstrates that the Defendant City failed to supervise and discipline Police Officers who use excessive force, and by doing so communicated tacit approval of the unlawful and unconstitutional excessive use of force which was a moving force in the deprivation of Antwon Rose II's constitutional rights.

94.     By reason of the aforementioned policies and practices of Defendant, Plaintiff's beneficiaries experienced severe pain and suffering and the loss of their son, for which they are entitled to recover damages. The aforementioned acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life, and death.

95.     Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant the City of East Pittsburgh pursuant to 42 U.S.C. § 1983, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under 42 U.S.C. §§ 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

## COUNT III – ASSAULT AND BATTERY
### AGAINST DEFENDANT ROSFELD

96.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

97.     At or about the dates and places alleged herein, Defendant Rosfeld, while acting within the course and scope of his duties as a Police Officers for the EPPD, without provocation, warrant, necessity, or legal justification, assaulted and battered Antwon Rose, II, by pointing his gun at Rose and shooting him at least three (3) times, thereby causing Rose's injuries and death as herein described.

98.     Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Rosfeld, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, and any other damages legally appropriate at the time of jury trial.

## COUNT IV – PUNITIVE AND EXEMPLARY DAMAGES
### AGAINST DEFENDANT ROSFELD

99.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

100.    The conduct of Defendant Rosfeld was malicious, willful, and wanton.

101.    Accordingly, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.  In the alternative, such heedless and reckless disregard of Rose' rights, safety and welfare are more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond the bounds of acceptable society, and as such Plaintiff requests punitive and exemplary damages be awarded against Defendants Rosfeld.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendant Rosfeld, pursuant to 42 U.S.C. § 1983, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under 42 U.S.C. §§ 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

Respectfully submitted,

/s/ Monte J. Rabner

**RABNER LAW OFFICES**
Monte J. Rabner, Esquire
  Attorney I.D. No.: 68251
Fred G. Rabner, Esquire
  Attorney I.D. No.: 77337
Ashley M. Cagle, Esquire
  Attorney I.D. No.: 312497

222 Boulevard of the Allies
Pittsburgh, PA 15222
(412) 765-2500
monte@rabnerlaw.com
fred@rabnerlaw.com
ashley@rabnerlaw.com

**McELDREW YOUNG**
Daniel Purtell, Esquire
  Attorney I.D. No.: 310376

123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
dpurtell@mceldrewyoung.com